IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSEPH R. WARNER,<br><br>          Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>BARBARA J. WARNER,<br><br>          Defendant/Counterclaim Plaintiff. | 8:22CV377<br><br>MEMORANDUM AND ORDER |

On November 3, 2022, plaintiff and counterclaim defendant Joseph R. Warner ("Joseph") sued his sister, defendant and counterclaim plaintiff Barbara J. Warner ("Barbara"), alleging she breached the fiduciary duty she owed him as the personal representative of their mother's estate (Filing No. 1). Barbara answered Joseph's Complaint and pleaded two state-law counterclaims against him (Filing No. 3), one for intentional infliction of emotional distress and another for abuse of process.

Upon Barbara's motion (Filing No. 14), the Court dismissed Joseph's Complaint as untimely on May 26, 2023 (Filing No. 24). Now before the Court is Joseph's *pro se* "Motion to Dismiss Counterclaim Pursuant to FRCP Rule 12(b) or for Summary Judgment Pursuant to FRCP Rule 56" (Filing No. 56). Because Barbara's allegations fail to plausibly "state a claim upon which relief can be granted," the Court grants Joseph's motion to dismiss.

I.  **BACKGROUND**[1]

This arduous eleven-year dispute between the Warner siblings, Joseph, Barbara, and their brother Philip Warner ("Philip"), arose after their parents died. Edmund Warner

---

[1]The Court summarizes the uncontested factual allegations from Joseph's now-dismissed Complaint. Because Barbara's well-pleaded allegations must be taken as true at

("Edmund"), their father, passed away on February 6, 2012. Their mother, Josephine Warner ("Josephine"), died on October 16th of that same year.

Josephine signed and executed a will on October 8, 2002. That day, Josephine and Edmund also signed a restatement of the family trust. After the Warner parents' deaths, Josephine's last will was admitted to probate by the County Court of Sarpy County, Nebraska ("state court"), on December 17, 2012. Barbara was appointed as personal representative of her mother's estate.

Many of the events that followed are hotly contested by Barbara and Joseph. At the center of much of that dispute is the siblings' disagreement over whether Edmund revoked the family trust in 2011. Joseph alleges Barbara erred as personal representative by failing to properly account for the estate's assets and by intentionally withholding certain assets in treating them as belonging to the trust that he contends was revoked. Barbara maintains the trust was not revoked and protests Joseph's allegations of misappropriation are nothing but "outright lies."

Barbara was eventually removed as personal representative by the state court on August 28, 2013. According to her, Joseph became the trustee of the estate funds and was under "orders from the Sarpy County court to distribute the estate funds to the designated heirs"—including Barbara—since at least 2016. Barbara states Joseph defied those orders, and so did Philip once he replaced his brother as trustee. Throughout the state-court proceedings, Barbara alleges that Joseph intentionally refused to cooperate and voluminously submitted spurious, false, and unsuccessful filings against Barbara to prolong the painful litigation.

In recent years, the Warner brothers continued their quarreling with their sister by initiating multiple *pro se* actions in federal court. In June 2022, Philip filed suit against

---

the motion-to-dismiss stage, those facts are also included herein. *See Spagna v. Phi Kappa Psi, Inc.*, 30 F.4th 710, 715 (8th Cir. 2022).

Barbara in the United States District Court for the District of Massachusetts (Case No. 3:22-cv-10865), alleging Barbara breached her fiduciary duty as the personal representative of their mother's estate. Barbara contends that suit was initiated "without consideration of the lack of personal jurisdiction over [her] in" Massachusetts and was "purely vexatious."

Just months later, Joseph initiated this action with allegations largely mirroring his brother's pleading. On May 26, 2023, this Court dismissed Joseph's Complaint as time-barred. *See* Neb. Rev. Stat. § 30-2206 (providing for a two-year limitation period for fraud committed in connection with probate proceedings).[2]

Barbara's *pro se* counterclaim against Joseph and Philip[3] alleges their actions in disputing the probate proceedings over the years constitute intentional infliction of emotional distress and abuse of process. She claims they should be liable for, among other things, $1.5 million in damages for causing her "protracted extreme emotional distress." The Court has jurisdiction over her state-law claims on the basis of diversity. *See* 28 U.S.C. § 1332(a)(1).

Joseph, now the sole counterclaim defendant, moves to dismiss Barbara's counterclaim pursuant to Rule 12(b)(6) or for summary judgment[4] "in the whole or in part"

---

[2]Just weeks after this Court's order dismissing his Complaint, Joseph filed suit against Barbara in the United States District Court for the District of New Jersey (Case No. 1:23-cv-03334) repeating most of the allegations he and his brother asserted in their other federal actions. As Barbara did not amend her counterclaim to include any allegations about this action, it is not considered in the Court's analysis.

[3]The Court previously determined Philip was not properly sued as a counterclaim co-defendant as he was not "a party to this lawsuit" and Barbara never filed proof of service with the Court (Filing No. 24). *See* Fed. R. Civ. P. 4.

[4]Joseph's motion for summary judgment wholly fails to comply with the local rules of this Court. *See* NECivR 56.1(a) (requiring the movant to file a "separate statement of material facts" and include "pinpoint references to affidavits, pleadings," and other

under Rule 56. *See* Fed. R. Civ. P. 12(b)(6), 56(a). In support of his motion, he largely reasserts his allegations of wrongdoing against Barbara and attempts to refute a few of her allegations. In closing, he argues Barbara "has no proof" he intentionally caused her extreme emotional distress "by the exercise of his legal rights" in any forum. He further asserts the "underlying probate litigation in Nebraska county court required extensive litigation and necessitated the [complained-of] actions."

Barbara, now with the assistance of counsel, contends Joseph's "motion for dismissal or summary judgment is without merit on both counts" (Filing No. 58). She argues her allegations are sufficient for the Court to infer Joseph is liable for intentional infliction of emotional distress and abuse of process under Nebraska law. In opposing summary judgment, she asserts the evidence attached to her response brief demonstrates Joseph's "campaign of threats and accusations of malfeasance against" her and duplicative, frivolous, and harassing use of the legal process to harm her.

Joseph's reply in support of his motion (Filing No. 59) again generally restates his claims of fraud against Barbara and attempts to counter the evidence she provides for her claims. The Court has carefully considered the whole of the parties' arguments, and the motion is ripe for its determination.

## II. DISCUSSION

### A. Standard of Review

Joseph urges dismissal is proper because Barbara's allegations do "not rise above the speculative level." Accordingly, the Court construes his argument as one for dismissal for failure to state a claim.[5] In considering such a motion, the Court accepts as true the

---

evidentiary materials). That failure is immaterial, though, as the Court does not reach the merits of his summary-judgment motion.

[5]Joseph answered Barbara's counterclaim on January 10, 2023 (Filing No. 4). As the Court explained before in this matter, a Rule 12(b)(6) motion "[t]echnically . . . cannot be filed after an answer has been submitted," but a failure-to-state-a-claim defense can be

4

well-pleaded facts in Barbara's counterclaim and grants all reasonable inferences in her favor. *See Rossi v. Arch Ins. Co.*, 60 F.4th 1189, 1193 (8th Cir. 2023). Facts and evidence included in her brief opposing dismissal but not alleged in the pleading, however, cannot be considered by the Court in deciding a motion to dismiss. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

"To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Whether allegations of wrongdoing rise above the speculative level requires context-specific analysis drawing on the Court's "judicial experience and common sense." *Id.* at 679.

### B. Intentional Infliction of Emotional Distress

Under Nebraska law,[6] the tort for intentional infliction of emotional distress has three elements: "(1) [t]hat there has been intentional or reckless conduct; (2) [t]hat the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community; and (3) [t]hat the conduct caused emotional distress so severe that no

---

advanced under a Rule 12(c) motion for judgment in the pleadings. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990); Fed. R. Civ. P. 12(h)(2). The Court therefore technically treats Joseph's motion for dismissal as a motion for judgment on the pleadings, though that "distinction is purely formal" since the same standard of review governs both motions. *Westcott*, 901 F.2d at 1488.

[6]Barbara applies Nebraska law in defending her claims, which makes sense given that the alleged events and harm largely occurred in the state. Joseph, who relies on little legal authority at all, does not object. The Court therefore finds Nebraska law governs the sibling's dispute. *See Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 388 (8th Cir. 2016) (applying Nebraska law in a diversity case based on *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

5

reasonable person should be expected to endure it." *Schieffer v. Cath. Archdiocese of Omaha*, 508 N.W.2d 907, 911 (Neb. 1993) (internal citations omitted). The cause of action therefore requires both extraordinary conduct and extraordinary consequences. *See id.*

To be actionable, the complained-of conduct must rise above common "trivialities" of life like "[m]ere insults, indignities, threats, annoyances, [or] petty oppressions." *Roth v. Wiese*, 716 N.W.2d 419, 432 (Neb. 2006). In fact, the conduct must be so objectively extreme and outrageous that "an average member of the community would resent the actor and exclaim 'Outrageous!'" upon hearing of the events. *Id.* at 432 (quoting *Heitzman v. Thompson*, 705 N.W.2d 426, 431 (Neb. 2005)). Whether conduct reaches this "high hurdle" must be determined "based on all the facts and circumstances of the particular case." *Heitzman*, 705 N.W.2d at 431 (describing sufficiently outrageous conduct as that which exceeds "the bounds of decency"). Factors including "the relationship between the parties and the susceptibility of the plaintiff to emotional distress" may be relevant to that analysis. *Brandon ex rel. Estate of Brandon v. County of Richardson*, 624 N.W. 2d 604, 621 (Neb. 2001).

Extreme distress must also have "existed on account of" that extreme conduct. *Roth*, 716 N.W.2d at 433. Generally, the plaintiff's emotional distress must be so extreme as to be disabling, *see Davis v. Texaco, Inc.*, 313 N.W.2d 221, 223 (Neb. 1981), which can often be satisfied by demonstrating persistent physical or mental symptoms that impact one's daily life, *see Roth*, 716 N.W.2d at 433 (contrasting "embarrassment, humiliation, anger, and nervousness" with continuous symptoms of extreme emotional distress like "hypersomnia, insomnia, recurring nightmares, anxiety attacks, depression, [] headaches" and frequent consumption of alcohol).

Unfortunately for Barbara, the bulk of her counterclaim allegations fail to do more than state general conclusions about the nature of her brother's actions and their impact on her. Specifically, she alleges that Joseph has made numerous filings in state and federal court "filled with mischaracterizations of events, and outright lies to support his claim" that

6

she wrongfully handled her mother's estate. That "protracted litigation" is alleged to have caused her "protracted extreme emotional distress."

On the basis of her barebones pleading, the Court cannot reasonably infer from the factual allegations that Joseph is liable for intentional infliction of emotional distress. *See Iqbal*, 556 U.S. at 678. There are simply not enough facts alleged describing the severity of Joseph's conduct and Barbara's resultant emotional condition to state a claim for that cause of action. While Barbara provides additional factual support for her claim in opposing dismissal, the Court cannot consider those unalleged circumstances in ruling on the motion to dismiss. *See Glick*, 944 F.3d at 717. Because Barbara "has failed to allege sufficient facts to state 'a claim to relief that is plausible on its face,'" her claim for intentional infliction of emotional distress does not survive Joseph's motion to dismiss. *Lindenwood Female Coll. v. Zurich Am. Ins. Co.*, 61 F.4th 572, 574 (8th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). While this largely unnecessary bickering between siblings has undoubtedly caused distress – what is alleged is not actionable under Nebraska law.

C.   **Abuse of Process**

The cause of action for abuse of process has a less developed history in Nebraska law than that for intentional infliction of emotional distress. *See Gordon v. Cmty. First State Bank*, 587 N.W.2d 343, 351 (Neb. 1998) (stating the Nebraska Supreme Court's "jurisprudence with respect to th[e] cause of action is not extensive, and [the] most recent cases discussing it were decided more than 60 years ago" at that time). That limited jurisprudence has clarified, however, that "two elements are necessary to an action for the malicious abuse of legal process: [(1)] the existence of an ulterior purpose; and [(2)] an act in the use of the process not proper in the regular prosecution of the proceeding." *Martin v. Sanford*, 261 N.W. 136, 141 (Neb. 1935) (quoting 1 T.M. Cooley, Torts § 131 (4th ed. 1932)); *accord* D. Dobbs et al., The Law of Torts § 594 (2d ed. 2023) [hereinafter "D. Dobbs"] ("The gist of the abuse of process tort is said to be the misuse of legal process primarily to accomplish a purpose for which it was not designed.").

7

"Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process." *Martin*, 261 N.W. at 141; *see also* Restatement (Third) of Torts § 26 (Am. L. Inst. 2020) (stating a claim for abuse of process does not arise "for other kinds of misconduct, not involving the misuse of process" like "[a]busive discovery requests" or "abuse of information" obtained through the judicial process). Neither is the commencement of "an action or causing [of] process to issue without justification," which instead might sustain an action for malicious prosecution. *Gordon*, 587 N.W.2d at 647 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 121, at 897 (5th ed. 1984)); *see also* D. Dobbs § 594 (describing the difference between the torts of abuse of process and malicious prosecution). Instead, a party must have intentionally misused "process," "orders that are issued by courts," to reach an illegal end, causing damage to the plaintiff. Restatement (Third) of Torts § 26.

Barbara generally alleges Joseph has "maliciously and deliberately misused civil process in both state and federal courts for the purpose of harming [her], causing her actual harm by [his] actions." More specifically, she asserts Joseph's filings in this action as well as in state court have been filled with "outright lies," his numerous filings in probate court have been "spurious and unsuccessful," and he "defied [the state court's] orders" to distribute estate funds.[7]

Accepting her allegations as true, Barbara fails to allege facts demonstrating any actionable misuse of process. In particular, she does not point to any situation in which Joseph—as malicious as his intent may have been—was successful in taking irregular steps "under cover of the process after its issuance." *Gordon*, 587 N.W.2d at 647 (quoting *Vybiral v. Schildhauer*, 265 N.W. 241, 244 (Neb. 1936)).

---

[7]Barbara also alleges Philip initiated the "purely vexatious" lawsuit in the District of Massachusetts "without consideration of the [court's] lack of personal jurisdiction" over her. Because Philip is not a party to this action, the allegations surrounding those proceedings are not considered in the Court's analysis of whether Barbara has stated a claim against Joseph.

8

As described above, any assertion that Joseph wrongfully initiated a civil action against Barbara without support for his claim may not sustain an abuse-of-process claim. *Gordon*, 587 N.W.2d at 647. Further, while the making of false statements in submissions to the court may sometimes constitute abuse of process where they are made to obtain the issuance of orders, Barbara's allegations fail to point to actual "process" issued by the courts that has resulted from or been misused through Joseph's alleged lies. *See, e.g., Gonzales Rucci v. INS*, 405 F.3d 45, 50 (1st Cir. 2005) (stating that "obtaining search and arrest warrants by means of false testimony is a proper basis for a claim of abuse of process"). Joseph's allegedly harassing use of filings or communications throughout the various proceedings, without more, also fails to support Barbara's claim. *See Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514-15 (2d Cir. 2020) (unpublished per curiam) (stating, under New York law, that plaintiffs could not rest their abuse-of-process claim on the defendants' commencement of a civil action or "use of appeals, objections, and motions"); *Matthews v. Storgion*, 174 F. App'x 980, 986 (6th Cir. 2006) (unpublished) (concluding, under Tennessee law, that appellees' abuse-of-process claim pointed to nothing that "emanate[d] from or rest[ed] upon court authority" where they claimed counsel sent copies of "depositions and pleadings" to their supervisor and threatened to pursue further action) (internal citation omitted)).

Taken together, Barbara alleges Joseph utilized his legal filings to harass her but does not allege how any actual "process" caused her the type of harm abuse-of-process claims are intended to address. *See* Restatement (Third) of Torts § 26 (describing that abuse of process generally occurs where "the wrongdoer commandeers the authority of the court to harm another party"); *Gordon*, 587 N.W.2d at 353 (stating the action for abuse of process "should be narrowly construed" to "protect the integrity of judicial process). Those allegations are insufficient to state a claim even under the liberal standards of the motion-to-dismiss stage.

### III. CONCLUSION

Because Barbara's sparse factual allegations fail to state a plausible claim for relief for intentional infliction of emotional distress or abuse of process, Joseph's motion pursuant to Rule 12(b)(6)—although not one of acute legal clarity—is granted. The Court therefore has no occasion to consider the parties' arguments pursuant to Rule 56. Accordingly,

IT IS ORDERED:

1. Counterclaim defendant Joseph Warner's motion to dismiss (Filing No. 56) is granted. His alternative motion for summary judgment is denied as moot.
2. Counterclaim plaintiff Barbara Warner's Counterclaim (Filing No. 3) is dismissed.
3. Counterclaim defendant Joseph Warner's Motion for Continuance (Filing No. 69) and counterclaim plaintiff Barbara Warner's Motion for Continuance (Filing No. 70) are dismissed as moot.
4. A separate judgment shall issue.

Dated this 8th day of March 2024.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge